The final case on our calendar for argument this morning is number 20-2007, Brown v. Netflix. Good morning, Mr. Knox. Good morning, Your Honor. You may proceed. May it please the Court. This appeal all comes down to burdens. It was the defendant's burden to establish fair use and they failed to meet that burden. Turning to the first fair use factor, the purpose and character of the use, courts consider the extent to which the secondary work is transformative, as well as whether it's used for commercial gain. Regarding transformative use, defendants are tasked with demonstrating that the infringing scene added something new to alter the song, giving it new expression, meaning, or message. Something more than simply the imposition of another artist's style on the original song. Notably, defendant's entire argument relies on assertions of fact extraneous to the record, and is therefore improper on the Rule 12 motion. First, defendants repeatedly refer to the film as a documentary, yet nothing in the film definitively establishes it to be a documentary. Defendants don't even attempt to cite to a portion that does. Indeed, defendants seek an improper inference where any and every inference under the circumstances must be in plaintiff's favor. Second, defendants argue that the film functions as a commentary. Once again, they don't point to any particular portion of the film, again asking the court to draw an improper inference in their favor. Finally, defendants argue that the intent of the filmmakers was to educate and inform the audience. Not only is this also not in the record, this court recently held an Andy Warhol Foundation for the Visual Arts, incorporated by Lynn Goldsmith, LTD, that the stated or perceived intent of the artist cannot establish a transformative use. Your Honor, I'll say that this is a fatal defect to their motion. Regarding the commercial use in particular, defendants acknowledged that the use was for a commercial purpose. Indeed, they streamed the infringing scene to their subscribers in exchange for a fee. Mr. Knox, may I state what I understand to be the defendant's position and make sure I understand your response to it, which is that they created a documentary and that that fits into the preamble part of the statute, that it's commentary or criticism of commentary on basically stripping as conducted by these five dancers in Portland, Oregon, and that it was necessary to this commentary to show their performance after having discussed how they developed it, how they came to be in this trade, etc. And so that's the argument as I understand it. From your brief, I know you argue that whatever the merits of that, it's not factually established on the record. But is anything more you're arguing in opposition to that theory of fair use? With that particular instance, no. But I will point out that my brief also points out that it's unknown at this point to what extent the song was actually used in any sort of live dance. We don't know if it was put in what we call post-production. Are you saying that there's a factual question whether the dancer used the song? Absolutely, Your Honor. There's factual questions about it. You have not sued the dancer for violation, is that right? Not at this point. If the case were to proceed and we get more information, that may become necessary in the future. But as of right now, no. Right now, your argument is that the whole documentary defense type argument that's been advanced is premature. Absolutely, Your Honor. Okay. I was going to ask about the context overall. I mean, I guess this is really reiterating the documentary defense. But it's one of the qualities we look for is whether there's been a transformative use. Both in terms of the performance and then the second layer of the documentary, the eight seconds of the song that appear seem both very limited and transformative in terms of addressing a different audience, delivering a different message, and being used in a way so that it's difficult for me not to conceive of this use as transformative, insofar as the dancer is concerned. But of course, she's not the defendant here, but certainly in terms of the film. What's wrong about that way of thinking about the use? Well, Your Honor, first, I would have to say that the portion of your question that deals with the difference in, I guess, the anticipated audiences, that really goes more toward the fourth factor. But nonetheless, just to address it in that context, the audiences or really the potential markets is sort of irrelevant as to what the initial intent was. Just as the court found in Castle Rock, it's not the original anticipated audience. So when it comes to the market, it's any potential market. So in Castle Rock, the quote is, Castle Rock has evidence little, if any, interest in exploiting the market for derivative works, but the copyright law must respect the creative and economic choice. It is the artist's right under copyright to decide whether or not to exploit a particular market. It doesn't necessarily give an infringer the right to step up and fill what they see as a gap. Now, I do apologize. Can you remind me of the remainder of your question? Oh, sorry. I talked about audience and about this being transformative, really. I am melding the elements of the test, I suppose, but looking at to whom it was directed these insignificant portion, the eight seconds, although obviously it's a distinctive part of the song, but it's a small portion of the whole song in which your clients had a copyright. So I'm looking at all of those elements together. But maybe you could just address the eight seconds, the relatively small portion of the song that is used by the dancer and then in the documentary. Isn't that one factor we should consider here in determining whether fair use has been made? It is, Your Honor. Now, that goes into the third factor in which it's the quantity and quality that's considered. In this instance, yes, it was only about eight seconds that was taken. However, it was an unaltered eight seconds. It was an eight seconds that also counted as the very heart of the song. We don't require alteration, do we, to find fair use? That goes into transformative purpose, Your Honor. So there does have to be some sort of alteration or transformative factor. Now, dealing specifically with the portion that you mentioned, yes, it's only eight seconds, but it's qualitatively significant in the sense that it's the song's chorus. It's literally the hook. And the Ninth Circuit has already held that a chorus to a song is qualitatively significant. So even under that circumstance where it's only eight seconds, it still weighs against fair use in this instance. Thank you. You have very good. We'll hear from your opponent. Mr. Brown. Good morning, and may it please the court, Jay Brown, for the defendant's appellees. I think it's fair to say that the parties agree, and I believe the panel is aware, that the propriety of the district court's ruling essentially rises or falls with whether the district court correctly determined that the use at issue was transformative. And I'll spend most of my time on that topic for that reason. I do have to respond to something counsel said in response to a question of Judge Carney about the so-called procedural errors of the district court. We'll largely stand on our papers with respect to those issues raised by the appellants. But on one point, counsel today said that we don't know if the song was put in in post-production. That is, if the producers of the film, who are also not a defendant in this case, neither the dancer nor the producer of the documentary is a defendant, just the distributors of the streaming version of the film are defendants. It is certainly true that the record does not definitively contain testimony about that, but two points in response. First of all, it is not alleged in the complaint that the song was put in, in post-production. Rather, in briefing, counsel has raised the speculative possibility that that was the case. But I respectfully, and that should end that line of inquiry, I think, as a basis for finding error on the part of the district court. Why should it? I mean, the only argument I would think you would have for wanting judgment here is that it's a documentary, that it's commentary on these dances. It's not any attempt to provide entertainment. And how do we know that at this point? I mean, I've watched the film. It looks like a documentary. I understand that. But how do we decide that as a matter of law at this point? In the absence of a plausible allegation to the contrary, the plaintiff is not entitled to have you draw inferences based on conclusory, or in this case, questions raised in the brief. So as a matter of procedural posture, they're not entitled to that indulgence. I'm not sure I understand why the law says that. I mean, this is a defense. This is a use of copyrighted material. And now you say as a defense, no, it falls within Section 107's preamble. It's commentary. And so I would think the burden was on you. You're suggesting the burden is on the plaintiff to plead that it's not commentary. Your Honor, that goes to the second point you made, which is that the film, upon viewing, as any reasonable viewer would understand it from its face, is a film providing commentary on the resurgence of a particular art form, burlesque, among a group of performers in Portland. There is nothing on the face of the film that suggests it is a fictional theatrical production. So you're saying because the film is part of the record, and that's what the film appears to any reasonable viewer, the plaintiff would have had to have said something more. Correct, Your Honor. Okay. Because what is properly before the court on the record, in this case, includes the film itself. And there is not a thing in the, I submit to the court, that in the 116 minutes, a thing in it that would lead even to the question, much less to the conclusion, that it is anything other than a depiction of actual people doing actual things. That is, that it's not a fictional work of filmmaking. And that is, I believe, a sufficient answer to the question of whether discovery is required on this point. That is to say, the film suggests it is fictional, and plaintiffs have not alleged it is so. So no discovery is necessary in order to resolve that question. And, Your Honor, I also don't think it is necessary for purposes of whether the film is entitled to the, I'm going to use the word presumption in the most generic sense, the presumption under Section 107 that it is a protected use. We don't have to define it as a documentary. What we have to define it as is a vehicle providing information or news to the public on how questionable it is, regardless of whether one disputes how precisely to define a documentary film. And for that reason, Your Honor, here, unlike, for example, in the case of TCA TV versus McCullum, the case involving the Abbott and Costello routine, which I know at least two members of this panel are intimately familiar with, we start in the protected categories of analysis, as the district court correctly did, of whether this use of eight seconds from the song merely substitutes for the original work, or whether the use here has a different purpose. And counsel earlier asserted that there is a question about that, but was confusing, I believe, there, the difference between artistic intent in terms of the message or mood to be which is not properly part of the transformative analysis and what function the infringing work plays versus the original work. And here, the original work indisputably is a song written according to the complaint for children. And here, the allegedly infringing work is not, as Your Honor pointed out, the dance routine performed in a theater in Portland, where it is possible that the fair use analysis would come out differently. I believe the dancer's use would qualify as fair as well, but that's not an issue before the court. She's not a party before the court. But here, where the filmmaker, in over the course of 116 minutes, describes the development of a new form or rebirth of the form of cultural entertainment, profiles five artists who described in the context of critical commentary about burlesque, its relationship to the American craft movement and the importance of elaborate costumes to this art form, and then focuses on one performer, Ms. Jamboree is her stage name, and shows her developing the act, wanting to do an act about mermaids, wanting to be part of a performance about food-themed songs, and figuring out how to transform her mermaid character into something related to food. We see her on camera say how you get from a person that's half fish to something that's half food. If you're dealing with the fish, you got fish sticks. I'm not quoting exactly, the court can see for itself what her words are on that. And then the film moves to the performance, showing in her elaborate mermaid costume, it does not purport to show her entire act, but shows her in the crafty costume, and then shows, briefly, her transition in the act to fish sticks when the character disappears into a supposed vat of hot oil. And during that scene, approximately eight seconds of music from the song is played in the background as part of her performance, and it's not the only song used in her performance. Whatever may be the correct fair use analysis of the dancer's use of that eight seconds in her performance, it surely must be the case, and the case law clearly, I think, establishes that a producer attempting to convey information to the public about that performance is entitled to show reasonable excerpts from it. And I submit as a matter of law, under this court's precedence, that the use of that eight seconds from a three-minute song as part of the act being described to the audience is necessarily a reasonable portion, even if it is the heart of the work, Your Honors, because as the case is clearly established, even where the heart of the work is taken, if that is necessary to the transformative purpose, that factor does not weigh against fair use. And here, the purpose of this segment of the film was to describe the creative process and show the result of it, and because of the dancer's routine, this song plays a role in that result. And if I am correct that the district court correctly, therefore, found this to be transformative, then the other factors in the fair use analysis fall into place rather quickly, and I'll spend only a moment on that unless the court has particular questions. Here, the small percentage used, and because it was necessary given the desire to communicate information about Ms. Jamboree's performance, the amount of the original used is at least neutral and arguably favors the defendants here. While the, I see my time is out, if I may just finish that thought. While the song is indeed creative and that can weigh against a defendant, here, precisely because the use was transformative, that factor becomes effectively neutral. And here, because the defendants were not producing a song to compete with these songwriters, but a documentary film that no one could use as a substitute for the song, there is no usurpation of the market. And for all of these reasons, the district court correctly... Let me ask you on that point. May I, Judge Carney, ask the question? Certainly. Basically, the concern for people in this context is that you take a children's song, you use it in adult entertainment, and when adults, if that becomes popular and becomes aware, you've basically ruined its ability to use the song for children's purposes because nobody's going to use it for that with its secondary meaning now. What's your response to that? Two things, Your Honor. First of all, in the parody line of cases, it is well-established that tarnishing the original is not the same as... But this is not parody. No, Your Honor, this is commentary. And it would undercut... The song is not relevant to the craft movement or anything. It's just coincidental to her performance. And if the dancer were the defendant in this case, that argument by the songwriters might well carry weight. But here, we have a different set of defendants, people who distributed a film that on its face is clearly intended to communicate information to the public. And in that circumstance, that we are criticizing the song, if that's how you read the film. I don't concede that it's critical of the song or that it in fact tarnishes the song. But if that is how you read it, it is nevertheless the case that our usage of it is for public commentary or public discussion of a particular art form that incorporated this piece. And from the perspective of these defendants, the principles that apply in the parody case appear equally here as they do in news analysis cases where a news report reflects critically on, for example, the performance of the National Opera Company and says, you know, it was a terrible performance of that song. That may well decrease the market to buy DVDs of the music played. But the television news reporter is allowed to play excerpt from the concert and to make critical remarks about the song as part of providing information to the public in that context. Judge Raji, did you have any follow-up? Thank you very much. Very good. Well, thank you, Mr. Brown. Thank you, Your Honors. We will hear rebuttal. Mr. Knox? Your Honor, I'll be very brief. I would just like the court to once again have put these conclusory arguments out there. They want you to just view the film and draw certain conclusions. These amount to impermissible inferences that they're seeking the benefit of. And accordingly, their motion should be vacated and the case be remanded. Oh, Mr. Knox, you heard your adversary. I mean, the film is part of the record. And if you look at the film and we were to conclude as a matter of law that it's a documentary, where does that leave you? Well, in the context of the documentary, just like Your Honor mentioned a moment ago, that the song itself was not necessary for that documentary. It's not necessary for them to use that in this particular piece. I'm not sure that's the conclusion. As I understand it, their view is they have a part of the film that talks with the performer and about her aspirations and about her crafting of her costume. And so then they have to show her use of the costume in the performance. And that's accompanied by the song. So they're saying that it was necessary to use it. Well, accordingly, in that particular instance, it goes back to the fact that we don't know who chose that song. They now want to jump behind the performer herself. And it's not clear on the record now whether or not it was the performer that used it, whether or not it was added in post-production. Let's look at who your defendants are. Whoever put it in, what would be the theory for Netflix, Amazon, or Apple being liable? Well, Your Honor, they're the ones essentially under the statute would have been the ones who performed the song. I mean, it's not disputed, is it? But they acquired the piece and then made it available on their platforms. They are not the producers of this work. So whether it's the artist or the dancer or the producer of the film who put in the music, you're not suggesting that Netflix, Amazon, or Apple did? At this point, no. No, I am not. Okay. So at that point, how are any of them liable? Whoever put it in? It's the same as anyone else that infringes something. They're the ones that performed it. They're the ones that sold it essentially to their subscribers. So they, under the statute, would be liable for the infringement. The performance of the song to their millions of subscribers. I don't have any more questions. Okay. Thank you, Mr. Knox. I think we have your arguments. We have your papers. We'll take the matter on advisement. Thank you, Your Honor. Thank you. That concludes our oral argument calendar for today. The clerk will please adjourn court. Court stands adjourned. Thank you, judges. I'll transfer you now.